749 F.2d 652
 53 USLW 2339, 21 Ed. Law Rep. 793
 Lisa M. MAYSON, by her parents and next friends, Mr. & Mrs.
W.K. MAYSON, Plaintiff-Appellee,
v.
Wayne TEAGUE, as State Superintendent of Education; State
of Alabama; the State Board of Education; State
of Alabama, Defendants-Appellants.
Dawn PARKER, By and Through her parents and next friends,
Mr. and Mrs. Donald M. PARKER, Jr.; and Mr. and
Mrs. Donald M. Parker, Plaintiffs-Appellants,
v.
STATE BOARD OF EDUCATION, STATE OF ALABAMA, Defendants-Appellees.
 Nos. 83-7612, 84-7024.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 26, 1984.
 
 Charles S. Coody, State Dept. of Educ., Montgomery, Ala., for Wayne Teague, Superintendent, and Ala. State Bd. of Educ.
 Collins, Galloway & Smith, Robert H. Smith, Mobile, Ala., for plaintiff-appellee, plaintiffs-appellants.
 Charles S. Coody, Jeffery A. Foshee, State Dept. of Educ., Montgomery, Ala., for defendants-appellees.
 Appeals from the United States District Court for the Southern District of Alabama No. 83-7612.
 Appeal from the United States District Court for the Middle District of Alabama No. 84-7024.
 Before TJOFLAT and JOHNSON, Circuit Judges, and DUMBAULD*, District Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 In this case, Superintendent Wayne Teague and the Alabama Board of Education appeal from an order enjoining Superintendent Teague from selecting as due process hearing officers under the Education for All Handicapped Children Act individuals who are officers or employees of local school systems which the child in question does not attend, or university personnel who have been involved in the formulation of state policies on educating handicapped children. Appellants argue that the district court's order should be vacated, as it was based upon an unacceptably broad interpretation of the requirements of the Education for All Handicapped Children Act (EAHCA), 20 U.S.C.A. Sec. 1415(b)(2), and its implementing regulations, 34 C.F.R. 300.57 (formerly 45 C.F.R. Sec. 121(a). 507). Because we conclude that the order of the district court is supported by both the requirements of the EAHCA and those opinions which have construed them, we affirm.
 
 I. THE FACTS
 
 2
 In Alabama, officers responsible for conducting due process hearings under the EAHCA are selected by the Superintendent of the State Board of Education. The three officers who compose a due process panel are selected from the areas of college teaching, school administration and local supervisors of special education. These individuals may be officers or employees of a local school system where the child involved is not attending school and they may be employees of an institution of higher education. Since late in 1979, panels have typically been composed of one university educator and two officers or employees of local school systems.
 
 A. Mayson et al v. Teague
 
 3
 Appellees Lisa Mayson and William Dean Carpenter are handicapped children who are enrolled in the Mobile Public Schools. In December 1978 appellees, who were dissatisfied with the educational plans that had been prescribed for them, sought and were accorded due process hearings.[1] Prior to the time of these hearings, the Maysons and Carpenters filed written objections to the method used by the state for selecting due process hearing officers. In their written objections, appellees alleged that the selection of hearing officers who are officers or employees of local school systems in which the child in question is not enrolled or who are university personnel involved in the formulation of state policies concerning special education violates the EAHCA and its implementing regulations. Due process hearings were subsequently conducted, and in each case a determination adverse to appellees was reached. Appellees' claims were then evaluated by a review panel, which was selected according to the same method as the due process panel. Prior to the second hearing, the Maysons and Carpenters filed a second set of written objections to the method of selecting hearing officers.
 
 
 4
 When the review panel affirmed the adverse ruling of the due process panel, the Maysons and Carpenters filed separate civil actions in the United States District Court for the Southern District of Alabama, alleging violations of the EAHCA and its implementing regulations. On August 11, 1979, the district court granted the motions of the parties to consolidate. On September 22, 1980, the court adopted a magistrate's recommendation that a class be certified, composed of all children who are, have been or will be enrolled in the Mobile Public School System who are affected by a learning disability, an educable mental retardation, a behavioral or emotional disturbance or a speech impediment.
 
 
 5
 On June 1, 1983, the court approved a partial settlement that had been reached by the parties, and issued a Consent Decree, Order and Judgment. The sole remaining issue in the case was whether the selection as hearing officers of officers or employees of local educational systems in which the child is not enrolled, and of university personnel who helped formulate state policy on educating handicapped children violates EAHCA and its implementing regulations. These regulations prohibit a hearing from being conducted
 
 
 6
 1) by a person who is an employee of a public agency which is involved in the education or care of the child or
 
 
 7
 2) by any person having a personal or professional interest which would conflict with his or her objectivity in the hearing.
 
 
 8
 34 C.F.R. 300.57 (formerly 45 C.F.R. Sec. 121(a). 507).
 
 
 9
 On October 5, 1983, the court issued an opinion to the effect that the selection procedure employed by the Alabama Board of Education violated the EAHCA and its implementing regulations. In accordance with this conclusion, the court entered an order enjoining defendants from selecting as hearing officers:
 
 
 10
 1) a Superintendent of Schools or Assistant Superintendent of Schools for any county or local public school system in the State
 
 
 11
 2) any employee of any (non-university) public school system in the State
 
 
 12
 3) any employee of the university system of the State who has participated in the formulation of regulations and policies of the State affecting handicapped children.
 
 
 13
 From this order Superintendent Teague and the Board of Education appeal.
 
 B. Parker v. Alabama Board of Education
 
 14
 Parker v. Alabama Board of Education arises from a similar set of facts. Dawn Parker is a handicapped child currently enrolled in the Auburn School System. In November 1980, Dawn's parents sought review of the educational plan that had been prescribed for her. When a due process panel was appointed, the Parkers filed a written objection to the method of selection employed, objecting particularly to the appointment of panel members who were employees of other local educational agencies. After the due process hearing was held, and the Parkers appealed from its decision, a review panel was appointed according to the same method. Once again the Parkers objected to the composition of the panel.
 
 
 15
 On April 29, 1981, after the review panel had rendered an adverse determination, Dawn Parker and her parents filed a civil action in the United States District Court for the Middle District of Alabama. The complaint stated that the City and State Boards of Education had not provided an appropriate education for Dawn pursuant to the EAHCA, and that the method of selecting due process hearing officers violated the impartiality requirements of the Act and the regulations promulgated under it. The Parkers sought both injunctive and declaratory relief.
 
 
 16
 On October 29, 1982, the Parkers entered into a Settlement Agreement with the Auburn City Board of Education which provided Dawn with the educational program she originally sought. On December 27, 1982, the Parkers moved to dismiss the Auburn City Board as a party to the civil action. The motion was subsequently granted. On December 9, 1983, the district court entered an opinion and order dismissing the action against the State Board of Education on the ground that the settlement between the Parkers and the City had rendered the action moot. The Parkers appeal from this judgment, arguing that their challenge to the state's selection procedures, while perhaps technically moot, falls within an excepted category of cases which are "capable of repetition yet evading review." See Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973). Because the question of whether the Parkers' action is "capable of repetition" is substantially dependent on whether this Court vacates or affirms the injunction issued in the Mayson case, we should consider first the merits of the Mayson challenge to the state's due process selection procedures.
 
 
 17
 II. "IMPARTIALITY" UNDER THE EDUCATION FOR ALL HANDICAPPED CHILDREN ACT
 
 A. Issues Framed by the Parties
 
 18
 The district court held that local educational agency personnel are "very closely aligned with" and "to some extent under the direct or indirect supervision of" the State Superintendent and the State Board of Education. For this reason, the court concluded that these individuals are employees of an agency "involved in the education or care of the child" and are not impartial within the meaning of the EAHCA. The court also found that the university personnel who have actively participated in the formulation of state educational policies affecting handicapped children do not meet the impartiality requirements of the Act. As the district court's discussion was comparatively brief, and this is a case of the first impression with little precedent bearing directly on the central questions, it will be helpful to begin with a thorough examination of the positions taken by the parties.
 
 
 19
 Appellants claim that the court adopted an inappropriately expansive interpretation of the statutory phrase "involved in the education or care of the child." They argue that this phrase refers only to officers or employees of the specific school district in which the child is enrolled. While appellants concede that there have been several court opinions holding that officers or employees of the State Board of Education may not serve as hearing officers, indicating that the state may also be understood as being "involved in the education or care of the child," they argue that these opinions reach no farther than state board employees and do not implicate employees of local school systems. Appellants claim that Congress, which was concerned only with the exclusion of the specific groups noted above, expressed no concern over the "supervisory control" cited by the court or the "appearance of impropriety" relied upon by appellees. Appellants finally note that to view university personnel who help formulate state programs as being "involved with the education or care of the child" would require the court to consider handicapped children as a group, rather than as individuals, in direct contravention of the intended (and judicially-sanctioned) emphasis of the Act.
 
 
 20
 Appellees endorse the district court's interpretation of the phrase "involved in the education or care of the child." They claim that under the State Constitution, the state (through its Board of Education) is the governmental unit charged with the education and care of handicapped children. Furthermore, while employees of local school systems are not technically employees of the State Board of Education, appellees argue that they should be considered as such for purposes of the Act, both because they are under the supervision of the Superintendent and the State Board of Education, and because in other legal contexts employees of local school systems have been considered to be agents of the state.
 
 
 21
 Appellees also claim that employees of local school systems have "personal or professional interest[s] which would conflict with [their] objectivity in the hearing." The position of the local school employee within the larger state system of education makes it unlikely that he could be objective in evaluating a claim involving a local school system. As an adverse due process hearing can sometimes lead to the withdrawal of state funds, appellees note, employees of local education systems might be concerned about retribution and about being subjected to adverse decisions, or they might be reluctant to set a high standard with which they too would have to comply. Appellees describe such attitudes not as hypothetical possibilities, but as motives which have been at work in recent years in the State system of education. They cite a situation, involving concerted action by local school officials and Superintendent Teague, which they claim produced a change in the selection of hearing officers.
 
 
 22
 In October 1979, Lance Grissett, Superintendent of the Talladega County Board of Education, wrote a letter to Superintendent Teague, expressing surprise and disappointment over the way that State Department of Education employees had been participating in the due process hearings in his county. Stating that his school system had "endured six such hearings" in the preceding eighteen months, Superintendent Grissett complained that there had been a lack of professionalism in the Department's response. He claimed that Department employees had offered placement recommendations and advice, often on the phone and on the basis of scant evidence, to the parents of handicapped children. He also noted that Department employees had given "minimal" input and assistance to his school system. Grissett stressed his understanding that "a primary function of, if not the overriding purpose for the existence of the State Department of Education, is to operate as a service agency to local school districts," and urged Teague to take action on the problem. Following this letter, Teague attended a regularly scheduled meeting with local superintendents, at which other administrative complaints were raised. Teague then appointed a select committee of local superintendents, including Superintendent Grissett, to consider administrative problems in special education.
 
 
 23
 On October 23, 1979, one day after the first meeting of this select committee, Grissett wrote Superintendent Teague a letter commending the attention Teague and his staff had given to Grissett's "recently expressed serious concerns." He noted that the problems facing local school systems in administering special education programs were "serious and complex in nature," but added that "much of the solution to this significant educational problem begins with getting 'our team' together, i.e., state Board and its staff, local Board and its staff, appropriate college and university personnel, etc." Stating that he appreciated " 'our kind' of State Superintendent exemplified in yesterday's discussions," Grissett offered his services in " 'getting our act together' subject to your direction and request."
 
 
 24
 After the October 22, 1979, meeting, a precipitous change took place in the composition of the due process and review panels selected by the Superintendent. Before the October 1979 meeting, panels most often contained a majority of university personnel. A compilation of panel composition figures stipulated by the parties indicates that 47 out of 54 panels appointed in 1977 and 1978 contained such a majority. After October 1979, however, not a single panel contained a majority of university personnel; all of these subsequent panels contained a majority of local educational system employees as hearing officers.
 
 
 25
 Finally appellees argue that university personnel who are involved in the formulation of state policies affecting the education of handicapped children are no more fit than local educational employees to serve as "impartial" due process hearing officers. Appellees note that a university employee who had had a role in formulating a state policy would inevitably find it difficult to overturn that policy, though the claim of a particular handicapped child might require it.
 
 B. Local School System Personnel
 
 26
 1. "Involved in the Education or Care of the Child"
 
 
 27
 Appellees correctly note that the Alabama Constitution charges the State Superintendent and the State Board of Education with responsibility for providing a public education for Alabama's children, a responsibility which presumably includes care for the educationally handicapped. Yet appellees need not rely solely on the Alabama Constitution to support their claim that the phrase "involved in the education or care of the child" extends beyond the local school system in which the child is enrolled. At least two recent cases, one citing the "clear legislative history of the statute," have held that this language cannot be construed as narrowly as appellants suggest. See Robert M. v. Benton, 634 F.2d 1139 (8th Cir.1980); Vogel v. School Board of Montrose, 491 F.Supp. 989 (W.D.Mo.1980). Though these cases technically hold that officers of a state board of education are barred from serving as hearing officers, the opinions also address the specific interpretive claim raised by appellants here: that the phrase in question refers only to the school system in which the child is enrolled. In Robert M. v. Benton, supra, the court stated:
 
 
 28
 The Senate Conference Report therefore indicates that the Act, promulgated as the conference substitute for differing House and Senate versions of the bill and passed November 1975 by both Houses, intentionally expanded its prohibition to include employees of state educational agencies not directly involved in the education of the child and so to disqualify them from serving as hearing officers under Section 1415(b)(2).
 
 
 29
 634 F.2d at 1142. See also Vogel v. School Board, supra, 491 F.Supp. at 995. While it is not clear that the court intended to include local school boards under the heading of "state educational agencies," such a construction seems plausible, as the term is as likely to connote educational agencies within the state as it is to refer to the State Board of Education. But even if the inclusion of local school boards was not intended or considered by the court in Robert M. v. Benton, these cases still offer persuasive evidence that the narrow interpretation proposed by appellants should be rejected. It remains only to consider whether officers and employees of local school boards can be considered agents or employees of the State Board of Education for purposes of the Act.[2]
 
 
 30
 Appellees argue that for purposes of tort immunity, employees of local school boards are considered to be agents of the state of Alabama. See, e.g., Hickman v. Dothan City Board of Education, 421 So.2d 1257 (Ala.1982); DeStafney v. University of Alabama, 413 So.2d 391 (Ala.1982). While immunity from tort actions need not be determinative of a question of federal statutory interpretation, these immunity opinions contain broader language which is relevant to the role played by local school board employees in the educational scheme of the state. In Enterprise City Board of Education v. Miller, 348 So.2d 782 (Ala.1977), the court stated that the extension of sovereign immunity to the local school board employees was appropriate because city boards of education, like county boards of education, are "agencies of the state, empowered to administer public education within the cities." 348 So.2d at 783.
 
 
 31
 The role described by the Alabama Supreme Court appears to be borne out, moreover, by the performance of both state and local school board employees over the past several years. Superintendent Teague's appointment of a select committee of local superintendents and the changes which followed in the state's administration of special education claims suggest that local educational employees do not act independently on questions of special education, but follow policies arrived at collectively by employees on both state and local levels. Indeed the gravamen of Superintendent Grissett's highly effective complaint to Superintendent Teague was that he had not seen sufficient evidence of the coordination between state and local officials that he believed to be the rule in the administration of the state's educational programs. Thus whether the relationship between state and local educational officials is supervisory, as the district court maintained, or cooperative, as appellees allege, the district court did not err in finding that officers and employees of local school boards are employees of agencies "involved in the education and care of the child."
 
 
 32
 2. "Personal or Professional Interest[s]" Affecting Impartiality
 
 
 33
 The district court did not consider the applicability of the second criterion of exclusion under the Act: a "personal or professional interest which would interfere with ... objectivity in the hearing." Appellees, however, present this factor as an equally persuasive basis for affirming the district court's order. Not only do they identify influences, such as fear of retaliation or reluctance to set high statewide standards, which would seem to interfere with objectivity on the part of local educational employees, they present evidence suggesting that in Alabama, at least, these potential sources of conflict have had palpable practical ramifications. The way in which the special education problem was addressed in Grissett's second letter to Teague--" 'our kind' of State Superintendent," "appropriate university personnel," "getting 'our team' together"--suggests that educators at both state and local levels had developed and intended to advance a common attitude about the provision of educational assistance for the handicapped. The precipitous drop in the number of university personnel appointed to due process panels after the meeting between Teague and the Select Committee suggests the willingness of educators at both levels to permit these attitudes to shape their administration of the Act. While appellees do not present evidence of bias in operation at a specific hearing, they provide ample evidence of a "professional interest" which had interfered with the impartiality of local school system employees in other phases of their administration of the Act, and might reasonably be expected to interfere with their objectivity during hearings. Though the district court did not rely on this ground, it provides additional support for the judgment entered by that court.
 
 
 34
 C. University Personnel Involved in State Policymaking
 
 
 35
 Appellants also challenge the district court's conclusion that university personnel who have been actively involved in the formulation of state policy in the area of special education are not sufficiently impartial to serve as hearing officers under the Act. However, appellants' claim, that the district court's position is untenable because it requires the court to consider handicapped children as a group, is undermined by cases such as Robert M. v. Benton and Vogel v. School Board, supra. In holding that the state school board is an agency "involved in the education and care of the child" because it is responsible for the education and care of all handicapped children, these cases clearly--and acceptably--view handicapped children as a group.
 
 
 36
 The district court's order regarding university personnel is supported by the same type of attitudinal argument which buttressed its order regarding local educational employees. When a university professor has taken an active part in formulating a state policy in the area of special education, it seems entirely plausible that he could become sufficiently personally or professionally invested in the policy that he would find it difficult to reverse or modify it as a due process hearing officer. Though this potential conflict has had fewer practical ramifications than the attitudes attributed to local educators,[3] given the comparatively narrow scope of the district court's order with respect to university personnel and the fact that appellants offer no persuasive ground for finding that the district court erred, it provides sufficient ground to require affirmance.
 
 III. PARKER v. ALABAMA BOARD OF EDUCATION
 
 37
 In Parker, the district court concluded that because the Parkers' settlement with the Auburn City Board of Education gave Dawn Parker the "rights and remedies which she initially sought ... [she] has no justicial [sic] interest in the constituency of the Boards which originally affected her interest." The Parkers argue that the case, while perhaps technically moot, should be heard by this court because it falls within that category of cases which is "capable of repetition yet evading review." Roe v. Wade, supra.
 
 
 38
 Because we affirm the district court's order, in Mayson v. Teague, 83-7612, requiring the State Board of Education to alter its method of appointing due process officers, the Parker case must be dismissed as moot. This dismissal rests not on the district court's conclusion that Dawn Parker has received everything she initially sought, but on the fact that this case is no longer "capable of repetition." Recent precedent suggests that the continued use of the procedures complained of is a major factor to be considered in determining whether a case under the EAHCA is "capable of repetition." See John A. v. Gill, 565 F.Supp. 372, 377 (N.D.Ill., E.D.1983); Sherry v. New York State Education Department, 479 F.Supp. 1328, 1335-36 (W.D.N.Y.1979). Moreover, the record and history of this case suggest that the Parkers considered Alabama's method of appointing due process officers to be largely responsible for the State School Board's failure to provide an appropriate educational program for Dawn. Thus it seems entirely unlikely that with a change in the method of appointing due process the "same complaining party will be subject to the same action again." Florida Farmworkers Council, Inc. v. Marshall, 710 F.2d 721, 731 (11th Cir.1983).
 
 
 39
 The judgment of the United States District Court for the Southern District of Alabama in Mayson v. Teague, 83-7612, is AFFIRMED.
 
 
 40
 The case of Parker v. Alabama Board of Education, 84-7024, is DISMISSED as moot.
 
 
 
 *
 Honorable Edward Dumbauld, U.S. District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 Appellees, who were dissatisfied with the educational plans that had been devised for them in the public schools, sought to enroll at a private educational institution, at the expense of the public school system
 
 
 [2]
 We reject appellants' argument that recent administrative rulings and letter findings of the Department of Education establish their claim that "involved in the education or care of the child" refers only to employees of that school district in which the child is enrolled. Appellees convincingly demonstrate that, in this area, administrative regulations have tended to follow the opinions of the federal courts rather than to serve as authority for them. The example cited by appellees, administrative reversal on the eligibility of state school board officials to serve as due process officers in the wake of cases such as Robert M. v. Benton, supra, bears sufficient similarity to the question raised by the instant case to persuade us that we need not be bound by administrative rulings on the question
 
 
 [3]
 Superintendent Grissett's reference to "appropriate university personnel" supports the proposition that university professors may vary in the degree to which they are disposed to favor state policies for educating the handicapped; professional association would seem to be one of the most influential factors leading university personnel to support such policies