**Lorne LEON and Susan Leon, for and on behalf of their minor son, Jeffrey LEON, Plaintiffs,**

v.

**The STATE of MICHIGAN BOARD OF EDUCATION and the Board of Education of Farmington Public Schools, Defendants.**

No. 92–CV–75006–DT.

United States District Court, E.D. Michigan, S.D.

Dec. 3, 1992.

Kathleen J. Walsh, Dearborn, MI, for plaintiffs.

Jane D. Woodfin, Asst. Atty. Gen., Lansing, MI, for defendant State of Michigan Counsel.

J. Kingsley Cotton, Dawn M. Hogan, Drolet, Freeman, Preston & Cotton, Bloomfield Hills, MI, for defendant Farmington Schools Counsel.

## OPINION AND ORDER

FEIKENS, District Judge.

Plaintiffs, Lorne and Susan Leon ("the Leons"), parents of a disabled minor son named Jeffrey Leon ("Jeffrey"), sue under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*; section 504 of the Rehabilitation Act of 1973, as amended ("section 504"), 29 U.S.C. § 794; 42 U.S.C. § 1983 ("section 1983"); and the Administrative Procedures Act of 1969, as amended, ("APA"), M.C.L. §§ 24.-201 *et seq.* The crux of plaintiffs' Complaint is that they were denied a due process hearing in front of an impartial hearing officer. Defendant The State of Michigan Board of Education ("State Board") has filed a Motion for Dismissal and Summary Judgment for all claims stated against it. Defendant The Board of Education of Farmington Public Schools ("Farmington") has filed a Motion for Summary Judgment and/or Motion to Dismiss Plaintiffs' Complaint for all claims stated against it. In this opinion, I find that there

are no genuine issues of material fact and/or there are no claims upon which relief can be granted.

## I. *Background*

Under IDEA, school districts are to provide a "free appropriate public education" to all eligible disabled children living within their jurisdiction. 20 U.S.C. § 1414(a)(1)(C)(ii). Utilizing an individualized educational planning committee ("IEPC") of school personnel and the disabled student's parents, an individualized education program ("IEP") is developed which describes the program and related services the student needs. A student's IEP must be reviewed at least annually. 20 U.S.C. § 1414(a)(5). Evaluations are to be conducted every three years, or more frequently if conditions warrant. 34 C.F.R. § 300.534(b) (1992).

If either the parents or the school district disagree with the IEP, or if a dispute arises as to the district's proposal or refusal to change the identification, evaluation, or educational placement of the child, a party is entitled to an impartial due process hearing. 20 U.S.C. § 1415(b)(2); 34 C.F.R. § 300.506(a) (1992). Any party aggrieved by the findings and decision made in this hearing is entitled to an impartial review of the hearing by the state educational agency. 20 U.S.C. § 1415(c); 34 C.F.R. § 300.510 (1992). Any party aggrieved by the review decision may then bring a civil action in state court or the United States District Court. 20 U.S.C. § 1415(e)(2).

Jeffrey's three-year evaluation began in 1990. A Multidisciplinary Evaluation Team ("MET") concluded that Jeffrey no longer fit the definition of handicapped under IDEA; a recommendation was prepared to submit to the IEPC to decertify him from special education. Plaintiffs stalled the IEPC meeting for one year.

Meanwhile, Farmington was found to be in noncompliance with certain U.S. Department of Education regulations regarding section 504 of the Rehabilitation Act. As a result, Farmington provided assurances to the U.S. Department of Education, Office of Civil Rights ("OCR") which required Farmington, among other things, to determine whether Jeffrey was handicapped as

defined under section 504. On May 30, 1991, Farmington's Building Education Committee (BEC) determined Jeffrey was not handicapped as defined under section 504, thereby making Jeffrey ineligible for special education benefits under the Rehabilitation Act.

Many of the BEC members were also members of Jeffrey's MET. Accordingly, on that same day, MET concluded to recommend to the IEPC that Jeffrey also was not handicapped as that term is defined under IDEA. The section 504 determination and the IDEA recommendation were communicated to the Leons at an IEPC meeting initially held on June 3, 1991, and which concluded on June 12, 1991. The IEPC determined that Jeffrey was not handicapped as the term is defined under IDEA, thereby making him ineligible for special education benefits under IDEA. After these meetings, the Leons exercised their rights to a due process hearing under IDEA and under section 504.

The Leons and Farmington were unable to agree on a hearing officer. Pursuant to 1979 AACS, R 340.1724a, the Michigan Department of Education selected James M. Flaggert, Esq. ("Flaggert") as a hearing officer for the IDEA due process hearing. Farmington asked Flaggert to simultaneously conduct the section 504 due process hearing and the IDEA due process hearing; Flaggert agreed. Prior to the hearing, the Leons moved for Flaggert to disqualify himself on grounds he was not impartial and was not appointed in accordance with lawful procedure. Flaggert denied this motion.

Flaggert affirmed Farmington's ineligibility determination of Jeffrey, and pursuant to 1979 AACS, R 340.1725, the Leons requested further review. The Michigan Department of Education ("Department") appointed Dr. Frank J. Wawrzaszek ("Wawrzaszek"), a retired Special Education Professor from Eastern Michigan University, as the State Level Reviewing Official ("SLRO"). The SLRO rejected plaintiffs' charges concerning Flaggert's bias and the process used for appointing review officials. The SLRO affirmed Flaggert's decision. Following the issuance of

the SLRO's decision, plaintiffs filed this appeal.

Parties filed briefs on the issues, and a hearing was held on November 20, 1992. For the reasons set forth below, defendant State Board's Motion for Dismissal and Summary Judgment and defendant Farmington's Motion for Summary Judgment and/or Motion to Dismiss Plaintiffs' Complaint are granted.

## II. *Analysis*

### A. Count I

Count I of plaintiffs' long and convoluted Complaint alleges that the State Board's procedures, to be followed by the Department in appointing hearing officers and SLROs, violate IDEA because the process allows individuals with personal and/or professional biases to serve as hearing officers. Plaintiffs say the State Board's failure to assure a hearing in front of an impartial officer is a violation of IDEA and the APA. The Leons ask this court to order the State Board to establish a new method of selecting hearing officers. Plaintiffs say the defective process resulted in a partial official (*i.e.*, Flaggert) hearing their case. As for relief against Farmington, the Leons seek a completely new hearing before an impartial hearing officer (or before this court) once the State Board's system is revised.

In support of its motions, Farmington argues that regardless of whether this court finds the State Board's selection process to be in violation of IDEA and/or the APA, hearing officer Flaggert was not biased as a matter of law. In support of its motions, the State Board argues that as a matter of law its procedures comply with IDEA and that the APA claim should be dismissed due to constitutional immunity from suit in federal court.

### 1. *Hearing officer's alleged bias*

34 C.F.R. § 300.507(a) (1992) which implements 20 U.S.C. § 1415(b)(2) provides, in part, that:

(a) A hearing may not be conducted: (1) by a person who is an employee of a public agency which is involved in the education or care of the child, or (2) by any person having a personal or professional interest which would conflict with his or her objectivity in the hearing.

Plaintiffs say that because Flaggert, as an attorney, almost exclusively represents school districts in special education matters, he is professionally biased.[1] This is the only factual allegation for the Leons' claim that Flaggert is biased. Plaintiffs offer no proof of actual bias but instead limit their claims to a risk that Flaggert is unable to step out of his role as a representative of school districts.

As part of his law practice, Flaggert does represent school districts. In denying plaintiffs' motion to disqualify himself from being a hearing officer, Flaggert stated:

The mere fact, no the mere fact, that's not fair, the fact that I do represent school districts should also be viewed at times that I do represent parents and advise parent groups on various rights they have in connection with hearings. I have been a hearing officer in various special education due process matters since 1974, and as I say, I have been on the appointment list by the State Department ever since they have commenced having that list. Based upon that, I will deny the motion to disqualify myself.

(Defendant Farmington's Brief In Support of Motion For Summary Judgment And/Or Motion To Dismiss, Exhibit H at 112). Moreover, in his Affidavit, Flaggert stated that in 1987 he was retained by a party and represented that party in a matter against Farmington; such a representation was adverse to the interests of Farmington. In the same affidavit, Flaggert stated that he has never performed legal services for Farmington, and he has never received any funds from Farmington with the exception of fees for services as a hearing officer. Based on these statements, it is clear that Flaggert has represented both school districts and students' parents. Not only has he never represented Farmington but one time, he even represented a party against the interests of Farmington.[2]

---

1. Neither federal nor state regulations define "personal or professional interest".

2. Plaintiffs say that because this is a motion under Fed.R.Civ.P. 12(b)(6), Farmington must

Much like the situation at hand, the parents in *Paula P.B. v. State of New Hampshire Dept. of Education,* 17 EHLR 897 (D.N.H.1991), argued that the hearing officer was biased because she had previously worked at a law firm which represented school districts. Like the case at hand, the evidence showed that the hearing officer had represented both parents and school districts in special education matters. The court stated that the fact that the hearing officer had represented both parents and school districts dispelled a claim of bias. *Id.* at 900.[3]

Even if Flaggert represents school districts significantly more than parents in special education matters, this does not mean he automatically sympathizes with the school district's viewpoint. The Michigan Rules of Professional Conduct recognize that an advocate can remain independent. The Comment to Rule 1.2, Scope of Representation, states:

> [R]epresentation of a client ... does not constitute an endorsement of the client's political, economic, social or moral views or activities.

71 Michigan Bar Journal No. 4, p. 41r (April, 1992).[4]

Further, in *Doyle v. Arlington County School Board,* 953 F.2d 100 (4th Cir.1991), the parents claimed the district judge who was reviewing the school district's IEPC determination erred in not disqualifying himself under 28 U.S.C. § 455(a) which provides, in part, that any judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The parents argued that the district judge was partial because previously he had been a member of the involved school district's board of education. The court of appeals stated:

> Plaintiffs attempt to analogize to *Crampton v. Department of State,* 395 Mich. 347, 351, 235 N.W.2d 352 (1975), in which Mr. Crampton was arrested for drunk driving; his refusal to submit to a blood alcohol content test meant his driver's license could be suspended or revoked. He exercised his right to a hearing before the License Appeal Board. However, Crampton claimed he was deprived of due process because the two-member board was comprised of a member of the Lansing Police Department and a representative of the Secretary of State. The court noted that as law enforcement officials, these people were identified and aligned with the state as the adversary of the citizen who was charged with a violation.
>
> > The risk that they will be unable to step out of the roles as full-time law enforcement officials and into the role of unbiased decisionmakers in a law enforcement dispute between a citizen and a police officer present a probability of unfairness too high to be constitutionally tolerable.
>
> *Id.* at 357, 235 N.W.2d 352. However, as discussed in the text, Flaggert is not employed by Farmington and has never represented Farmington; he is not a full-time and exclusive representative of school districts. Moreover, the Michigan Rules of Professional Conduct make clear that his legal assistance to school districts does not mean automatically he personally and morally concurs with school districts' outlook on special education. Thus, unlike the board members in *Crampton,* Flaggert was not an adversary of the Leons.

accept the allegation that Flaggert "normally, regularly, and almost exclusively, represents school districts in Special Education matters." Complaint, para. 73. However, Farmington's motion is for summary judgment and/or dismissal. Thus, Fed.R.Civ.P. 56(e) can apply; under such a rule, plaintiffs' failure to submit an affidavit, particularly in response to Flaggert's affidavit, means that plaintiffs cannot rest upon such an allegation.

3. Plaintiffs attempt to distinguish *Paula P.B. v. State of New Hampshire Dept. of Education,* 17 EHLR 897 (D.N.H.1991). The most important difference, plaintiffs say, is that the hearing officer in *Paula P.B.* was a state administrator which plaintiffs claim Flaggert was not. Plaintiffs claim the deference usually given to administrators is inappropriate in the case at hand. The Leons say that because the APA was not followed in regards to whom should be the hearing officer, the assumption of the hearing officer's impartiality *does not exist* as it did in *Paula P.B.* However, the only significance of the hearing officer being a state administrator in the *Paula P.B.* court's opinion was when it stated: "[W]ithout a showing to the contrary, state administrators 'are assumed to be [wo]men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.'" *Id.* at 900 (citations omitted). The same can be said about hearing officers, regardless of whether they possess the title of state administrator.

4. Furthermore, plaintiffs do not cite a single case where an individual in Flaggert's position was recused.

Prior association with a party "does not, in itself, form a reasonable basis for questioning a judge's impartiality." ... Litigants are entitled to a judge free of personal bias but not a judge without any personal history before appointment to the bench."

*Id.* at 103 (citations omitted). Although *Doyle* involved the alleged bias of a judge rather than a part-time hearing officer, "§ 455, although not applying to disqualification of administrators, is a useful and persuasive guide." Kenneth Davis, *Administrative Law Treatise*, § 19.6. The Leons' claim is even weaker than the parents' claim in *Doyle* because, as explained above, the decision-maker in the Leon's case has not had any professional relationship with Farmington.

Further, the United States Supreme Court has ratified situations where the opportunity for bias is greater than the facts presented in the case at hand. For example, in *Goldberg v. Kelly*, 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287 (1970), the Court said that "prior involvement in some aspects of a case will not necessarily bar a welfare official from acting as a decision maker." Similarly, in *Withrow v. Larkin*, 421 U.S. 35, 58, 95 S.Ct. 1456, 1470, 43 L.Ed.2d 712 (1975), the Court rejected a rule that prior involvement of a tribunal as accuser, investigator or prosecutor automatically precludes participation as adjudicator.

2. *State Board's alleged improper procedures*

■ Plaintiffs advance a systemic challenge to the process by which hearing officers and SLROs are appointed in special education cases. The Leons claim the process violates IDEA, APA, and section 1983.

a. IDEA

(1) *Hearing official*

Section 1415 of IDEA provides in part:

[T]he parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by the State educational agency or by the local educational agency or intermediate educational unit, *as determined by State law or by the State educational agency.* No hearing conducted pursuant to the requirements of this paragraph shall be conducted by an employee of such agency or unit involved in the education or care of the child.

20 U.S.C. § 1415(b)(2) (emphasis added). IDEA does not specify how hearing officers are to be selected and does not require parental participation in the process. *Hessler v. State Board of Education of Maryland,* 553 EHLR 262 (D.Md.1981), *affirmed* 700 F.2d 134 (4th Cir.1983). When the parents and the school district do not agree on a hearing officer, the Department will appoint one; this occurred in the case at hand. 1987 AACS, R 340.1724a(1). The hearing officer is randomly selected from a pool of eligible persons. The Department will not include a person in the pool if it has been advised by a party that the person has a contractual or personal relationship with either party. The Department excludes persons from the pool who had been rejected by either party during the parties' unsuccessful attempt to mutually agree on a hearing officer. If all eligible persons are rejected by either party, then the pool will include all eligible persons. The appointment process is designed to exclude from the selection pool all persons likely to be predisposed against a party.

Plaintiffs attack the system as violating IDEA because the pool from which the Department selects hearing officers may include employees of school districts, state university employees, and attorneys who represent school districts.[5] While such persons, if eligible, may be in the selection pool, various rules and procedures, some of which are explained above and below, exist

5. A review of the vitae of the persons who are part of the pool of potential hearing officers demonstrates that many such persons, despite being school district employees, university employees, or attorneys representing school districts, also have been associated with or have advised parents or advocates for the disabled. As explained throughout the text, preventing such persons from being within the pool would deprive both school districts and parents of experienced and knowledgeable hearing officers, thereby accomplishing a public disservice.

to assure their impartiality. Specifically, in terms of the eligibility of district employees to serve as hearing officers, 1987 AACS, R 340.1724a(2)(c) bars a hearing to be conducted by:

> [a]n employee or board member of the involved local school district, of another local district within the same intermediate school district, or of the intermediate school district of which the involved district is a part.

Plaintiffs cite the case of *Mayson v. Teague*, 749 F.2d 652, 657 (11th Cir.1984), in which the court interpreted the phrase "employee of such agency or unit" in 20 U.S.C. § 1415(b)(2), cited above, as including officers and employees of local school boards not directly involved in education of the child at issue; in other words, such individuals would not be allowed to serve as hearing officers. The Michigan regulation, 1987 AACS, R 340.1724a(2)(c), only prohibits employees of the affected school district from hearing a case. Moreover, *Mayson* said that university personnel who had been involved in the formulation of state policies for the education of disabled children were not sufficiently impartial to serve as hearing officers. Wawrzaszek, a former university professor, served on state advisory committees for evaluation and assessment services.

However, as I have reiterated throughout this opinion, Jeffrey's hearing officer was an attorney, not a school district employee. Wawrzaszek was the SLRO and not the hearing officer. *Mayson* and plaintiffs' challenge to the inclusion of school district employees and university personnel in the eligible pool may not even be relevant; plaintiffs were not aggrieved in any way by such employees' actions. Nevertheless, I reject the rationale of *Mayson;* it assumes that individuals who have devoted themselves professionally to the implementation of special education are biased against the very children they have devoted their lives to helping. The rationale in *Mayson* also has been rejected by the OCR, the administrative agency responsible for enforcing IDEA and section 504. *See Illinois Board of Education,* 257 EHLR 600 (OCR, 1984).

Further, despite any suggestions by plaintiffs, university employees are not under the control of the State Board of Education. State universities in Michigan enjoy constitutional autonomy and are not subject to the control of the State Board. Const. 1963, art. 8, §§ 3–6; *Regents of the University of Michigan v. Michigan,* 395 Mich. 52, 235 N.W.2d 1 (1975).

Allowing attorneys who provide legal services to other school districts to serve as hearing officers in special education cases is not of a nature to constitute an "interest" giving rise to bias in administrative proceedings. Kenneth Davis, *Administrative Law Treatise,* § 19.6. Moreover, these attorneys are selected frequently to serve as hearing officers by the mutual consent of parents and school districts; such a situation reflects an acknowledgment by parents and school districts of the skills held by attorneys who specialize in a highly technical area of the law and who understand various physical and mental impairments. There is no measurable probability of a bias to warrant automatically excluding attorneys, who counsel other school districts, from the pool of potential hearing officers.

Michigan hearing officers have a duty of candor and the responsibility to rule on motions to disqualify themselves. 1987 AACS, R 340.1725e(2) provides:

> The hearing officer shall disclose to both parties any relationship of a professional or personal nature that might have a bearing on the hearing officer's ability to conduct a fair hearing or render an impartial decision and shall consider motions to disqualify himself or herself.

If the motion to disqualify is denied, the party can raise the issue on appeal as was done in the case at hand. Thus, despite Plaintiffs' claims, there are procedures within the Department to determine the appropriateness of an individual sitting as a hearing officer.

### (2) *Impartial hearing*

██ 20 U.S.C. § 1415(a) says:

> Any State educational agency . . . which receives assistance under this subchapter

shall establish and maintain procedures to assure that children with disabilities and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies and units.

Plaintiffs claim that the State Board has violated IDEA by failing to assure impartial due process hearings. Specifically, plaintiffs contend that the hearing lacks procedures or evidentiary rules as well as rules establishing the proper scope of review. Complaint, p. 8. However, the State Board's due process hearing procedures have been approved by the U.S. Department of Education as in compliance with IDEA. Such a determination is entitled to substantial weight by this court. *See Blum v. Bacon*, 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982) (the application and interpretation of a statute by the agency charged with its administration is entitled to substantial deference).

■ Moreover, administrative rules for special education cover a broad spectrum of procedural guarantees for a special education hearing such as: cross examination, an on-the-record proceeding, representation by counsel, location and time of a hearing at a place and time of convenience to the parties, requirement of a decision within 30 days of the hearing, right to appeal a hearing officer's ruling, etc. *See* 1987 AACS, R 340.1724 and 340.1725. Thus, as a matter of law, the State Board has assured impartial due process hearings as required under IDEA.[6]

**(3)** *State level reviewing official (SLRO)*

■ Neither IDEA nor its regulations require parental participation in the selection of reviewing officials. SLROs, such as Wawrzaszek, are appointed on a rotational basis; they are not employees of the Department and are not under the Department's control. Thus, despite any suggestions by plaintiffs to the contrary, adequate procedures for the appointment of an impartial SLRO exist.

**b. APA**

■ Plaintiffs claim that the State Board has violated the Michigan Administrative Procedures Act ("APA") by not promulgating internal procedures for the appointment of hearing officers. However, the Eleventh Amendment to the U.S. Constitution bars a federal court from granting any relief against a state or state official for alleged violations of state law. In *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984), the Supreme Court said:

> We concluded above that a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.... We now hold that this principle applies as well to state-law claims brought into federal court under pendent jurisdiction.

Thus, plaintiffs' APA cause of action must be dismissed.

**c. Section 1983**

■ Plaintiffs' Complaint makes a general reference to Jeffrey's due process rights under the Fourteenth Amendment and 42 U.S.C. § 1983. However, the Complaint seeks no relief against the State Board under either provision. Even if the Complaint sought such relief under section 1983, it could not be granted. The State Board is a state agency entitled to Eleventh Amendment immunity from suit under

---

**6.** Despite plaintiffs' suggestion, the State Board has by no means admitted there has been a failure to promulgate rules of procedure and evidence in violation of Jeffrey's due process rights. Plaintiffs claim that because the State Board has filed a Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)") motion, it has said there are no material issues of fact in dispute and therefore admits the "factual" allegation that there is a lack of rules of procedure and evidence. However, such an allegation is a conclusion of law, not a statement of fact. Thus, the State Board has not admitted that there has been a failure to promulgate rules of evidence and procedure. Further, a motion filed pursuant to Rule 12(b)(6) which is accompanied by an affidavit is to be treated as a Fed.R.Civ.P. 56 ("Rule 56") motion. Rule 12(b). When a defendant files an affidavit under Rule 56, the complainants are not allowed to rest on their pleadings, but must instead present evidence of a dispute of material fact. Rule 56(e).

section 1983. *Quern v. Jordan,* 440 U.S. 332, 338, 99 S.Ct. 1139, 1144, 59 L.Ed.2d 358 (1979). Local government units are not considered part of the State for Eleventh Amendment purposes. *Id.* Thus, plaintiffs cannot state a cause of action under section 1983 against the State Board.

### B. Count II

Allegations in Count II are directed against Farmington and not against the State Board. Count II claims that plaintiffs were deprived of a due process hearing before an impartial hearing officer, as guaranteed by the Rehabilitation Act, because of Flaggert's bias. As discussed above, I find that Flaggert was not biased as a matter of law; therefore, I grant summary judgment to Farmington on this portion of Count II. Also, plaintiffs claim in Count II that Farmington violated various assurances it gave to the OCR, thereby violating Jeffrey's rights under section 504 of the Rehabilitation Act.

Section 504 states in part:

No otherwise qualified individual with handicaps ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a).

 Nowhere in the Complaint do plaintiffs allege Jeffrey was subjected to discrimination because of his handicap. In order to state a cause of action under section 504, plaintiffs must show Jeffrey "is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap." *Doherty v. Southern College of Optometry,* 862 F.2d 570, 573 (6th Cir.1988), *cert. denied,* 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). "Discrimination" requires either bad faith or gross misjudgment before a violation can be shown; plaintiffs have alleged neither. *Johnston v. Ann Arbor Public Schools,* 569 F.Supp. 1502 (E.D.Mich.1983), citing *Monahan v. Nebraska,* 687 F.2d 1164, 1506 (8th Cir.1982), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983).

 Plaintiffs claim they have an actionable section 504 claim for several reasons. As described in the background section of this opinion, in the recent past OCR found that Farmington was in noncompliance with section 504 as it related to Jeffrey and 100 other students. As a result of this determination, OCR required Farmington to sign assurances concerning procedural rights. Plaintiffs say one of the assurances was that Farmington would make a determination about Jeffrey's section 504 eligibility at an IEPC meeting. The assurance states:

By June 7, 1991, the District [Farmington] shall convene J.L.'s [Jeffrey Leon's] annual IEPC meeting at which persons knowledgeable about J.L. and the meaning of the evaluation data being reviewed will be in attendance. At this meeting, participants will ... determine if J.L. is handicapped under section 504 of the Rehabilitation Act of 1973.

Instead, the BEC determined on May 30, 1991, that Jeffrey did not meet the definition of handicapped under section 504; this decision was communicated to the Leons at the June 3, 1991, IEPC meeting. Plaintiffs claim the determination having been made by the BEC instead of the IEPC prevented those parties most eligible about Jeffrey to determine his eligibility status; they claim this violated his due process rights and his contractual rights established when Farmington entered into a contract with OCR.

 However, plaintiffs cite no case law or regulation that Farmington's section 504 determination was improper. This is no surprise since the assurance that the Leons claim Farmington violated was addressed exclusively to Jeffrey; of all the children in the Farmington School District, only Jeffrey was allegedly entitled to have his eligibility determination made at an IEPC meeting. Moreover, in an August 5, 1992, letter OCR stated that Farmington's actions in determining Jeffrey's ineligibility under § 504 were consistent with § 504 and therefore did not violate Jeffrey's § 504 rights. The letter said:

The District [Farmington] informed the complainant of the BEC decision at the IEPC meeting with respect to Student A

[Jeffrey] initiated on June 3 and continued on June 12.... The District thus provided the complainant with sufficient notice of due process rights. Since the actions taken by the BEC on May 30, 1991, and by the IEPC on June 3 and 12, 1991, were consistent with the standards and procedures which the District completed on June 7, 1991, OCR will require no further action on this matter.

The application and interpretation of a statute by the agency charged with its administration, which this letter represents, is entitled to substantial deference.[7] *Blum v. Bacon,* 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982).[8]

Also, the Leons claim Farmington has adopted procedures which allow it unlimited discretion in choosing a section 504 hearing officer, thereby violating due process. Farmington's section 504 standards and procedures have been found to be "generally adequate" by the OCR. Such a determination is entitled to weight. *Id.* Farmington followed the approved standards when it appointed Flaggert; the Leons have not alleged the standards were not followed. Thus, for the reasons stated above, Farmington's motions and the State Board's motions are granted.

IT IS SO ORDERED.

---

7. Plaintiffs contend that the August 5, 1992, OCR letter was in response to a telephone inquiry by Farmington's counsel. The Leons say the OCR response is based upon purported facts as told to it by Farmington's counsel, and is not an appropriate exhibit for a Fed.R.Civ.P. 12(b)(6) motion. However, plaintiffs do not say the facts communicated to the OCR were inaccurate; moreover plaintiffs do not say why such a letter is inappropriate for a Fed.R.Civ.P. 12(b)(6) motion. In the absence of such allegations and explanations, the letter shall be assumed to be accurate.

8. Moreover, Flaggert, who I have already determined was not biased, stated in his decision: "I

find that any procedural defects which may exist in this matter in connection with IDEA and Section 504 were not substantial or material enough to adversely affect the outcome of these matters." Flaggert's April 30, 1992, *Decision* at p. 19. Further, Flaggert declared: "In short, all the procedures involving IDEA ("MET and IEPC") and the Section 504 determinations were extremely lengthy, extensive, and thorough." *Id.* at p. 17. *See Hiller v. Board of Education of Brunswick Central School District,* 743 F.Supp. 958, 970 (N.D.N.Y.1990) (child was not denied free and appropriate education solely on basis of school district's procedural violations of IDEA absent showing that any violations resulted in prejudice to child or parents).