**L.B. and J.B., on behalf of K.B., Plaintiffs,**

**v.**

**NEBO SCHOOL DISTRICT, Nebo Board of Education, Collin Allan, Utah State Office of Education, Steven O. Laing, and Mae Taylor, Defendants.**

**No. 2:00CV889K.**

United States District Court, D. Utah, Central Division.

July 30, 2002.

---

Mark J. Griffin, Woodbury & Kesler, Salt Lake City, UT, Gary S. Mayerson, New York, NY, for Plaintiffs.

Peggy E. Stone, Alain C. Balmanno, Utah Attorney General's Office, Litigation Unit, Salt Lake City, UT, for Defendants.

## MEMORANDUM DECISION AND ORDER

KIMBALL, District Judge.

This matter is before the court on Plaintiffs' Motion for Modified De Novo Review and Summary Judgment, and Defendants' Motion for Summary Judgment. The court heard oral argument on these motions on April 30, 2002. At the hearing, Plaintiffs were represented by Gary Mayerson and Mark Griffin, and Defendants were represented by Alain Balmanno and Peggy E. Stone. Having fully considered the motion, memoranda, and materials submitted by the parties, the administrative record from the due process hearing, and the facts and law relevant to these motions, the court enters the following Order.

## BACKGROUND

L.B. and J.B. are the parents of K.B., who was born October 2, 1994. Plaintiffs reside in the Nebo School District. K.B. was diagnosed with an autistic spectrum disorder on May 28, 1997. On that date, K.B. was enrolled in a private preschool and she was referred to the Nebo School District ("the district") for evaluation and special education services. In October 1997, the district determined that K.B. was eligible to receive special education services.

On October 2, 1997, an Individualized Education Program ("IEP") was prepared for K.B., but it was not complete because the only services requested by plaintiffs were occupational therapy and speech and language therapy. The Nebo School District began providing K.B. with the requested therapy. For health reasons, K.B. was placed in home instruction during the winter.

On December 2, 1998, another IEP was prepared for K.B. The proposed services included placement at the district's Park View Special Education Preschool ("special education preschool"), speech therapy, occupational therapy, and one-on-one instructional therapy. The district's special education preschool combines typically-developing children along with disabled children. Plaintiffs agreed with the goals of the IEP, but did not agree with the placement at the district's special education preschool. Plaintiffs did not sign the IEP.

On January 27, 1999, plaintiffs notified the Nebo School District of their intent to file for a due process hearing and requested an independent educational evaluation of K.B. In March and April 1999, K.B. received additional testing.

On May 5, 1999, an IEP team convened to discuss K.B.'s IEP and placement for the 1999–2000 school year. The proposed services again included placement at the

district's special education preschool, speech therapy, occupational therapy, one-on-one instructional therapy, and attendance at the summer preschool program and one-on-one instructional therapy during the summer. Plaintiffs again agreed with the goals but not with the placement. Plaintiffs did not sign the IEP. On August 19, 1999, another meeting was held, at which the district offered alternatives to plaintiffs, including a preschool class comprised of half typically-developing children or including children from K.B.'s neighborhood. Plaintiffs did not agree with these alternatives.

Throughout this time, K.B. continued to attend her private preschool with typically developing children. She attended the preschool with a shadow aide, who was present to assist K.B. when needed.

On December 7, 1999, L.B. and J.B. filed a request for a due process hearing pursuant to the Individuals with Disabilities in Education Act ("IDEA") to contest the services and placements the Nebo School District had offered to K.B. The IDEA allows parents to request a hearing when a school "refuses to ... change the identification, evaluation, or educational placement of the child ... or the provision of a free appropriate public education to the child." 20 U.S.C. § 1415(b)(3)(B). "Whenever a complaint ... has been received ... the parents involved in such a complaint shall have an opportunity for an impartial due process hearing ..." *Id* § 1415(f)(1).

Because the parents and the school district could not agree on a hearing officer from a list compiled by the State Board of Education, the State Board of Education appointed Dr. Ralph Haws as the administrative hearing officer. Due to personal reasons, Dr. Haws recused himself. The State Board of Education then appointed Dr. Steven K. Hirase as the hearing offi-

cer. Dr. Hirase is an administrator for the Murray School District.

The due process hearing was held over the course of five months, on March 1–3, 2000, May 15–17, 2000, and July 14, 2000. Seventeen witnesses testified at the hearing and six volumes of exhibits were entered into evidence. Dr. Hirase issued his Administrative Due Process Hearing Decision and Order on October 16, 2000 ("Decision and Order").

Dr. Hirase concluded that the Nebo School District's current proposed placement for K.B. at the Park View Special Education Preschool was an appropriate placement in the least restrictive environment and that K.B.'s 1998–1999 IEP and 1999–2000 IEP provided K.B. with free and appropriate public education ("FAPE") under the IDEA. Dr. Hirase reasoned that Nebo School District has the authority to determine the instructional methodology to implement a student's IEP based on the student's unique needs and K.B. did not require 40 hours of Applied Behavior Analysis ("ABA") therapy to provide her with FAPE.

Dr. Hirase further concluded that K.B.'s 1997–1998 IEP did not provide her with FAPE. This determination was based on the fact that the IEP was not complete and, although the parents did not request further services, the district should have dome a complete IEP. Dr. Hirase also concluded that K.B. was not provided a required twelve-month program of services during the 1997–1998 or 1998–1999 school years. However, Dr. Hirase found that Plaintiffs were not entitled to reimbursement for these failures. In making this decision, Dr. Hirase relied upon cases concluding that parents may waive their right to seek reimbursement if their request for a due process hearing is not timely made and if they unilaterally change their child's educational placement.

Based upon his findings of fact and conclusions of law, Dr. Hirase ordered the following: (1) the Park View Special Education classroom was an appropriate placement for K.B. based upon the developed IEP; (2) the Nebo School District should convene an IEP team meeting to determine whether a portion of K.B.'s IEP could be implemented in a preschool with typically developing children with appropriate aids and supplementary services; and (3) any and all other relief requested by plaintiffs was denied.

In this case, plaintiffs have appealed Dr. Hirase's Decision and Order, claiming that K.B. was denied FAPE under the IDEA. Plaintiffs have also brought civil rights claims under 42 U.S.C. § 1983 for due process violations, state law breach of contract claims against the Nebo school district, and requested that the state's autism eligibility rules be stricken.

## DISCUSSION

### I. STANDARD OF REVIEW

■ In *Murray v. Montrose County School District RE-1J*, 51 F.3d 921, 927 (10th Cir.1995), the Tenth Circuit discussed the unique standard of review in an IDEA case as follows:

"Judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir.1993), *cert. denied*, 513 U.S. 825, 115 S.Ct. 90, 130 L.Ed.2d 41 (1994). The IDEA specifically requires a district court reviewing a challenge under the IDEA to "receive the records of the administrative proceedings, . . . hear additional evidence at the request of a party, and, basing its decision on the

preponderance of the evidence," grant any appropriate relief. 20 U.S.C. § 1415(e)(2). Thus, the court does not use the substantial evidence standard typically applied in the review of administrative agency decisions, "but instead must decide independently whether the requirements of the IDEA are met." *Board of Educ. v. Illinois State Bd.*, 41 F.3d 1162, 1167 (7th Cir.1994).

However, "[t]he fact that § 1415(e) requires that the reviewing court 'receive the records of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be given to these proceedings." *Rowley*, 458 U.S. at 206, 102 S.Ct. at 3051 (quoting 20 U.S.C. § 1415(e)(2)). The district court must therefore independently review the evidence contained in the administrative record, accept and review additional evidence, if necessary, and make a decision based on the preponderance of the evidence, while giving "due weight" to the administrative proceedings below. This has been described as a "modified de novo review," *Doe v. Board of Educ.*, 9 F.3d 455, 458 (6th Cir.1993), *cert. denied*, 511 U.S. 1108, 114 S.Ct. 2104, 128 L.Ed.2d 665 (1994), or as "involved oversight." *Lenn v. Portland Sch. Comm.*, 998 F.2d 1083, 1087 (1st Cir.1993).

The parties dispute the proper way to apply the "due weight" standard set forth in *Murray*, specifically with respect to the degree of deference this court should give the hearing officer's findings of fact. The parties' dispute arises because the Tenth Circuit noted that it had previously found that a court need not assume deference to a hearing officer's decision under IDEA and then compared that language with other circuits' decisions holding that factual findings should be considered prima facie correct. *See Murray*, 51 F.3d at 927 & n. 11; *see also Doyle v. Arlington County*

*Sch. Bd.,* 953 F.2d 100, 105 (4th Cir.1991) (recognizing that "findings of fact by the hearing officers ... are entitled to be considered prima facie correct, akin to the traditional sense of permitting a result to be based on such fact-finding, but not requiring it"); *Combs v. School Bd.,* 15 F.3d 357, 361 (4th Cir.1994) (giving "deference to the findings of the original administrative factfinder," and holding that "[w]hen both the original hearing officer and the state review officer agree on issues, ... even greater deference is due"). Although not entirely clear, the *Murray* court appears to have been distinguishing between the deference given to legal conclusions under the Act and the deference given to findings of fact. Construing the *Murray* court's language to mean that no deference is given to legal conclusion or findings of fact would be inconsistent with the due weight standard.

Nevertheless, it is unnecessary in this case to resolve whether giving "due weight" to the hearing officer's factual findings specifically means that the facts are considered prima facie correct. The Tenth Circuit has acknowledged that the due weight standard falls between the substantial evidence standard and a pure de novo standard. The Tenth Circuit attempted to clarify this standard by noting that "[t]he First Circuit has carefully described the district court's obligation as one designed to render a 'bounded independent decision-bounded by the administrative record and additional evidence, and independent by virtue of being based on a preponderance of the evidence before the court.'" *Id.* (quoting *Roland M.,* 910 F.2d at 990 (quoting *Town of Burlington v. Department of Educ.,* 736 F.2d 773, 791 (1st Cir.1984)), *aff'd on other grounds,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)). The court concludes that this standard gives the court adequate guidance as to the applicable level of review

and no further refinement of the standard is necessary for purposes of determining the present case.

■ Plaintiffs also argue that the traditional due deference standard in an IDEA case should be impacted and adjusted in this case, where there are allegations that Utah's hearing officers historically rule for the school district, where the hearing officer appointed to hear K.B.'s due process had ruled in favor of school districts in previous matters, and where the hearing officer had an alleged conflict of interest because his wife was employed by the same school district that employed the expert witness for Nebo School District. Plaintiffs also argue that the standard of review should be adjusted where, as here, the hearing officer found that the defendants had failed to satisfy some of their statutory obligations to K.B. but then failed to make findings on issues alleged by plaintiffs. Plaintiffs make these contentions but cite no case law to support the idea that the court should or could depart from the modified de novo standard and employ a full de novo standard. Because Plaintiffs' request that this court review its IDEA claims under a pure de novo standard of review is not supported by any case law and the request is not supported by the facts of this case, the court will not deviate from the modified de novo standard applicable in IDEA cases.

■ The party challenging the outcome of the state administrative decision in an IDEA case bears the burden of proof. *Johnson v. Independent Sch. Dist. No. 4,* 921 F.2d 1022, 1026 (10th Cir.1990), *cert. denied,* 500 U.S. 905, 111 S.Ct. 1685, 114 L.Ed.2d 79 (1991). Because the administrative decision in this case was in favor of the school district, plaintiffs bear the burden of proof before this court with respect to its IDEA appeal.

With respect to plaintiffs' remaining claims in this case, the court reviews those claims under the regular summary judgment standard. Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir.1991).

Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gonzales v. Millers Casualty Ins. Co.*, 923 F.2d 1417, 1419 (10th Cir.1991). All material facts asserted by the moving party shall be deemed admitted unless specifically controverted by the opposing party. DUCivR 56–1(c).

In considering whether genuine issues of material fact exist, the court does not weigh the evidence but instead inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir.) *cert denied*, 502 U.S. 827, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991). The parties filed their motions for summary judgment simulta-

neously; therefore, there is a significant amount of overlap between the motions.

## II. MOTIONS FOR SUMMARY JUDGMENT

The parties filed cross motions for summary judgment that contain a substantial amount of overlap. Plaintiffs move for summary judgment arguing that the due process hearing officer's Decision and Order should be reversed for several reasons, that the hearing officer in this case has a conflict of interest, that defendants' hearing officer selection process violated due process, and that defendants violated K.B.'s civil rights and breached an express or implied contract with plaintiffs in failing to apply an alleged "maximum potential" educational standard with respect to K.B.

Defendants move to dismiss plaintiffs' appeal of the hearing officer's Decision and Order, plaintiffs' claim that the state hearing officer selection process is unconstitutional, plaintiffs' request to strike the state's autism eligibility rules, and plaintiffs' civil rights and state law contract claim regarding the alleged maximum potential educational standard adopted by Nebo School District.

### A. IDEA Appeal

Plaintiffs ask this court to overturn the October 16, 2000 Decision and Order because the Nebo defendants failed to provide K.B. with a free and appropriate public education ("FAPE") under the IDEA. Specifically, plaintiffs claim that they are entitled to reimbursement for providing K.B. with appropriate educational services because the Nebo defendants failed to educate K.B. in the least restrictive setting and with non-disabled, typically-developed peers to the maximum extent appropriate.

■■■ "The IDEA is a comprehensive statute enacted to ensure that all children with disabilities have access to 'a free ap-

propriate public education ... designed to meet their unique needs.'" *Murray v. Montrose County School District RE–1J*, 51 F.3d 921, 925 (10th Cir.1995), *cert. denied*, 516 U.S. at 910, 116 S.Ct. 278, 133 L.Ed.2d 198 (1995) (citations omitted). What constitutes a free appropriate public education is determined on a case-by-case basis, pursuant to procedures established by the IDEA. *See Board of Educ. v. Rowley*, 458 U.S. 176, 181–82, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). A student's needs and the services required to meet those needs are prescribed by an individualized education program ("IEP") that is developed in a meeting attended by the student's teacher, a district special education professional, and the student's parents. *See* 20 U.S.C. § 1401(20).

■■ "The IDEA contains both extensive procedural requirements designed to ensure that an IEP is properly developed for each child and that parents ... have significant involvement in the educational decisions involving their children, as well as substantive requirements designed to ensure that each child receives the 'free appropriate public education' mandated by the Act." *Murray*, 51 F.3d at 925. When reviewing the adequacy of an IEP, a court must first determine whether the school district " 'complied with IDEA procedures, including whether the IEP conformed with the requirements of the Act.'" *O'Toole v. Olathe Dist. Schs. Unified Sch. Dist. No. 233*, 144 F.3d 692, 698 (10th Cir.1998) (quoting *Urban v. Jefferson County Sch. Dist. R–1*, 89 F.3d 720, 726 (10th Cir. 1996)). The court must then examine " 'whether the IEP was reasonably calculated to enable [the student] to receive educational benefits.'" *Id.* (quoting *Urban*, 89 F.3d at 726).

The Tenth Circuit has characterized the obligation to educate disabled children in the least restrictive environment ("LRE")

in which they can receive an appropriate education as one of the most important substantive requirements of the IDEA. *Id.* at 926. Section 1412(5)(B) of the IDEA provides:

> [T]o the maximum extent appropriate, children with disabilities ... [must be] educated with children who are not disabled, and ... special classes, separate schooling, or other removal of children with disabilities from the regular educational environment [shall] occur ... only when the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily....

20 U.S.C. § 1412(5)(B). The Supreme Court has not addressed how courts should evaluate whether the LRE requirement has been met, and the circuits have developed various standards. *See Murray*, 51 F.3d at 926. While the Tenth Circuit has not adopted one specific standard for evaluating whether the LRE requirement has been met, it has held that the LRE mandate of section 1412(5)(B) does not require a school district to fully explore supplementary aids and services before removing a child from a neighborhood school, "[i]t is only so obligated before removing a child from a regular classroom with nondisabled children." *Id.* at 930.

### 1. Additional Evidence

■ The first issue the court must address is whether to supplement the record with respect to plaintiffs' IDEA appeal. Plaintiffs seek to supplement the existing administrative record with three deposition transcripts and additional discovery from this action. Plaintiffs also ask this court to unseal the balance of an attorney-authored document which the Nebo School District's expert witness referred to during the due process hearing. The first page of

this document was made a part of the record because the witness was referring to it during her testimony at the hearing; however, the remainder of the document, which was not relied upon, was sealed as privileged. Plaintiffs argue that the evidence they seek to add to the record is information that they did not know of at the time of the due process hearing and the evidence is relevant to other claims involved in this proceeding.

■] Under 20 U.S.C. § 1415(e)(2), a reviewing court "shall receive the records of the administrative proceedings [and] shall hear additional evidence at the request of a party." Although the language of the IDEA states that a court shall take additional evidence if a party makes a request, the Tenth Circuit has held that a district court need only take additional evidence if the court finds, in its discretion, that the evidence is necessary. *Murray,* 51 F.3d at 927 *cert. denied,* 516 U.S. 909, 116 S.Ct. 278, 133 L.Ed.2d 198 (1995); *O'Toole,* 144 F.3d at 698. The starting point for a determination of what additional evidence is necessary is the administrative record. *Town of Burlington v. Department of Educ.,* 736 F.2d 773, 790–91 (1st Cir.1984).

In this case, plaintiffs have failed to show where the administrative record from the due process hearing fails and why additional evidence is necessary. Plaintiffs contend that K.B. was not accorded the impartial, due process hearing to which she was entitled under the IDEA, and that discovery in this action shows that K.B. would not have received a fair hearing anywhere in Utah because of the system in place. However, this argument and the evidence supporting it relates to Plaintiffs' due process cause of action, not their IDEA appeal. The court concludes that the administrative record developed at the due process hearing is sufficient for the Court to decide the IDEA issues present-

ed in the case. However, the court will consider the additional evidence to the extent that it is relevant to plaintiffs' due process claims.

As to the parties' debate regarding whether a document that was prepared by the school district's attorney and relied on by the school district's expert witness for a portion of her testimony at the due process hearing should be unsealed and made a part of the record, the court concludes that the sealed portion of that document is confidential and should not be added to the record. The first page of the document is part of the record because the witness used it to testify. The remainder was sealed because the witness did not rely on it. Because the witness did not rely on the sealed portion of the document, the confidentiality of the sealed portion was not waived. Also, the sealed portion is not relevant to the administrative hearing below. The document was not admitted into evidence and it was not relied on by the hearing officer. The court concludes that this document is not necessary to the IDEA appeal and, therefore, will not supplement the record.

Plaintiffs also ask this court to exclude the testimony of the district's expert witness based on *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Company v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Plaintiffs had the opportunity to cross-examine defendant's expert witness at the due process hearing, but never sought to exclude her testimony based on a lack of qualifications. Based on the record before the court, plaintiffs' attack on the district's expert witness is based more on their disagreement with her methodologies than it is with her qualifications. Therefore, even if such a challenge is permissible in an appeal of an administrative

hearing, the court finds no basis for this challenge and declines to strike the expert's testimony.

## 2. Factual Findings

The parties dispute plaintiff's burden in attacking Dr. Hirase's factual findings. Defendants argue that plaintiffs are specifically required to indicate which of the factual findings are unsupported in the record. Plaintiffs assert that it is sufficient and appropriate for them to deal with what it considered errors in the hearing officer's findings thematically, however, in any event, plaintiff's Reply Memorandum specifically challenged the individual findings of fact they believe were made in error.

Because plaintiffs made specific challenges to factual findings, the court concludes that it need not determine plaintiffs' specific burden with respect to attacking factual findings. The court has thoroughly reviewed the evidence cited by plaintiffs to challenge the factual findings and the evidence cited by defendants in support of the factual findings. Plaintiffs' attacks often focus on their belief that additional findings should have been made. However, Dr. Hirase is not obligated to make specific findings as to all of the evidence that comes in at the hearing. Factual findings, by nature, are a relevant summary of the pertinent facts. As a whole, plaintiffs' attacks on the findings of fact focus more on their differences with Dr. Hirase's legal conclusions than with the evidence supporting the findings of fact. After its review of the record, the court concludes Dr. Hirase's factual findings are supported by a preponderance of the evidence and his findings should not be disturbed.

## 3. Procedural Violations of the IDEA

Plaintiffs argue that Dr. Hirase failed to consider procedural violations under the IDEA. According to Dr. Hirase's order, no party raised procedural violations of the IDEA. However, plaintiffs dispute that finding because the second issue for the hearing was stated as: "Whether Nebo School District failed to offer or provide [K.B.] with FAPE consistent with [K.B.'s] least restrictive environment between October 2, 1997 and present date." Plaintiffs argue that in determining whether a school district offered a student FAPE, there must always be an analysis of whether there were any procedural FAPE deprivations.

Plaintiffs' argument that Dr. Hirase ignored procedural violations itself ignores the fact the Dr. Hirase addressed the issue and determined that no procedural violations had been alleged. Plaintiffs were allowed to determine the issues that were presented at the hearing and determined by the hearing officer. They could have asked for specific procedural violations to be addressed, but failed to do so. At the due process hearing and before this court, plaintiffs have made no claims with respect to traditional procedural violations, such as the issuance of proper notices, information of rights to the parents, proper attendance at IEP meetings, or the contents of the IEP. Because plaintiffs failed to raise any of these traditional procedural violations before the hearing officer, the hearing officer moved to the substantive issues under the IDEA.

Plaintiffs assert before this court that their claims that the district's decisions were improperly motivated by financial considerations goes to the procedural safeguard requirements to "individualize" K.B.'s educational program and that its claims that the hearing officer and the hearing officer system in general were biased can be considered procedural viola-

tions of the IDEA. Although these claims could be cause to invalidate the hearing officer's decision, they are not procedural violations that were improperly ignored by the hearing officer. Even in this case, Plaintiffs brought their bias claims in the form of separate due process civil rights violations. To the extent that these claims could also be construed as procedural violations of the IDEA, the court will address them when it analyzes plaintiffs' due process claims. Plaintiffs' claim regarding the improper use of cost as a factor in the school board's decision will be addressed as a potential substantive violation of the IDEA.

### 4. Substantive Violations of the IDEA

Plaintiffs argue that although K.B. was already making progress in a mainstream preschool in the Fall of 1999 with the assistance of an aide, the Nebo School District improperly determined that its special education preschool was the appropriate placement for K.B. Plaintiffs claim that in proposing this placement the Nebo School District failed to meet its obligations to educate K.B. in her least restrictive environment and with non-disabled peers to the maximum extent appropriate. Defendants assert that the disputes regarding the least restrictive environment for K.B. and the obligation to educate K.B. with non-disabled peers to the maximum extent appropriate are disputes over the correct methodology to apply in this case.

Relying on the IDEA's implementing regulations, Section 300.550, plaintiffs argue that mainstream education should not be denied to a child simply because the child needs an aide. 34 C.F.R. § 300.550(b) provides:

Each public agency shall ensure—

(1) That to the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are nondisabled; and

(2) That special classes, separate schooling or other removal of children with disabilities from the regular educational environment occurs only if the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

■■■■■ To determine what was substantively appropriate under the IDEA, the hearing officer needed to determine whether the district's program for K.B. was reasonably calculated to provide K.B. with "some educational benefit." *Urban v. Jefferson County School District R–1,* 89 F.3d 720, 726 (10th Cir.1996). "The 'basic floor of opportunity' provided by the Act consists of access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." *Rowley,* 458 U.S. at 201, 102 S.Ct. 3034. "[T]he 'appropriate' education required by the Act is not one which is guaranteed to maximize the child's potential." *Johnson v. Independent Sch. Dist. No. 4,* 921 F.2d 1022, 1029 (10th Cir.1990), *cert. denied,* 500 U.S. 905, 111 S.Ct. 1685, 114 L.Ed.2d 79 (1991). "The school district is required by statute and regulations to provide an appropriate education, not the best possible education or the placement the parents prefer." *O'Toole,* 144 F.3d at 708 (quoting *Heather S. v. Wisconsin,* 125 F.3d 1045, 1057 (7th Cir.1997)).

In reviewing whether that basic floor of opportunity has been provided, the Supreme Court has cautioned that "questions of methodology are for resolution by the states," and it is "highly unlikely that Congress intended courts to overturn a state's choice of appropriate educational theories

in a proceeding." *Board of Education v. Rowley,* 458 U.S. 176, 207–08, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). "[C]ourts must be careful to avoid imposing their view of preferable educational methods upon the States." *Id.* at 207, 102 S.Ct. 3034. The Tenth Circuit has recognized that a dispute concerning the best methodology for educating a disabled child is "precisely the kind of issue which is properly resolved by local educators and experts." *O'Toole,* 144 F.3d at 709.

■■■ Issues of methodology are usually left in the hands of local school districts because courts and hearing officers usually lack the specialized knowledge and experience to resolve "difficult questions of educational policy." *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 42, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Moreover, defendants assert that hearing officers and courts should not dictate a specific methodology because of the danger that such a holding would lead districts to adopt one methodology, thereby lessening the district's autonomy to find better techniques and hindering their ability to individually tailor each child's special education program as dictated by the IDEA.

■■■ Defendants argue that evidence introduced at the due process hearing established that at the time the district's special education preschool was proposed as K.B.'s placement it was the least restrictive environment for K.B. and it educated K.B. with nondisabled peers to the maximum extent appropriate. There was evidence presented that the district preschool would have helped K.B. work on her independence, social skills with both disabled and nondisabled peers, and make reasonable academic progress.

The district's special education preschool included some non-disabled children, and disabled children at many different levels of disability. Therefore, the preschool did not entirely segregated K.B. from typically-developing peers. Also significant was evidence at the hearing that K.B. was relying heavily on her shadow aide at the regular preschool, which made the placement more restrictive. In addition, K.B. was doing one-on-one ABA at home during that time, which is the most restrictive placement possible. The district concluded, therefore, and there was testimony given at the due process hearing to support the conclusion, that the special education preschool was K.B.'s LRE and it would provide educational benefit for K.B.

Plaintiffs make several arguments that the private preschool was K.B.'s LRE. But plaintiffs fail to explain why its difference in thought in this regard is not an issue of competing methodology. Plaintiffs dispute defendants' claim that K.B. relied too much on her aide at the private preschool and assert that the IDEA presupposes that a child may be supported by an aide in order to educate the child to the maximum extent possible with non-disabled peers. Plaintiffs and defendants have differing opinion as to how much reliance on an aide effects the determination of a child's LRE and how much reliance makes the mainstream placement appropriate. This dispute appears to be a question of competing methodologies.

Although the IDEA and its implementing regulations allow for an aide to assist in educating a child with non-disabled peers to the maximum extent appropriate, plaintiffs' arguments appear to advocate that all children should be mainstreamed with the use of an aide regardless of the amount of reliance on the aide the child needs. But the regulation's use of the language "maximum extent appropriate" acknowledges that not all children should be mainstreamed and that some children may receive more educational benefit in a specialized setting. If educating K.B. in a

private preschool with the use of an aide makes the setting more restrictive than the proposed special education preschool, as there was evidence to support, the mandates of the IDEA are not being met. To conclude that the district's proposed placement of K.B. at the district's preschool was not reasonably calculated to provide K.B. with educational benefit in her LRE would require this court to engage in a comparison of methodologies, which it will not do.

Plaintiffs argue that this case is not a "methodological dispute" because the district's autism intervention program is impermissibly eclectic. Evidence introduced at the due process hearing established that the district's autism intervention program includes ABA, DTT, and other components that should be adapted to each child's individual needs. Therefore, there is no evidence that the district's program is inappropriate. This evidence shows merely that the district's program is designed to be tailored to the individual needs of the child, which is entirely appropriate under the IDEA. Plaintiffs try to compare this case to *T.H. v. Board of Educ. of Palatine*, 30 IDELR 764, 55 F.Supp.2d 830 (N.D.Ill. 1999). But, in that case, the district did not use ABA or DTT, and there were problems with the district's IEP process. None of those problems are present in this case.

■■■ Plaintiffs also argue with respect to the LRE issue that rather than attempting to allow K.B. to attend a private preschool with non-disabled students, K.B.'s proposed placement was in the district's preschool simply because it was what the district had to offer, not what K.B. needed. There is no evidence that the district's preschool was the only option the district had to offer. In fact, the district evaluated K.B.'s performance at the private preschool with the use of the aide. Obviously, this evaluation was made be-cause the district was assessing that placement as a possibility. There was also evidence that the district offered the plaintiffs alternatives to the current preschool configuration, but those alternatives were not accepted. Therefore, there is no basis for plaintiffs' assertion that the special education preschool was chosen because it was the only option the district had available to it.

■■ The parties also disputed the amount of ABA therapy that was necessary to provide K.B. with FAPE. Both parties agreed at the due process hearing that ABA and DTT were appropriate methods to teach K.B. The parties' only disagreement is over the amount of one-to-one ABA therapy K.B. requires to receive "educational benefit." The district offered and has provided fifteen hours a week of ABA to K.B. since March 1999, whereas plaintiffs have advocated forty hours a week of ABA.

Plaintiffs contention that the district must provide K.B. with forty hours of one-on-one ABA therapy fails because there is no consensus that one-on-one ABA therapy is the only efficacious method for teaching children with autism. *See, e.g., Gill*, 31 IDELR 29. Plaintiffs' expert could not testify as to the number of hours of ABA therapy K.B. required to receive some educational benefit. Moreover, numerous courts have rejected parental claims for more hours of one-on-one ABA therapy on methodology grounds. *See, e.g., Renner v. Board of Educ.*, 185 F.3d 635, 645 (6th Cir.1999); *Adams v. State of Oregon*, 195 F.3d 1141, 1150 (9th Cir.1999); *D.B. v. Ocean Township Bd. of Educ.*, 985 F.Supp. 457, 536 n. 59 (D.N.J.1997); *Alexander K.V. Virginia Board of Educ.*, 30 IDELR 967 (E.D.Va.1999); *Gill v. Columbia*, 31 IDELR 29 (W.D.Mo.1999), *aff'd*, 217 F.3d 1027, 2000 WL 914155 (8th Cir.); *Fairfax County Pub. Schs.*, 22 IDELR 80 (SEA

Va.1995). Therefore, this court concludes that the appropriate number of hours of ABA therapy is a methodological dispute in which this court should not get involved, and, in any event, the proposed program for K.B. was structured to provide K.B. with FAPE.

Plaintiffs also allege that the decisions with respect to K.B.'s placements and services were improperly driven by financial considerations. Defendants admit that money issues were discussed at the IEP meetings and the due process hearing, but claim that they never said that they would not provide a particular service solely because of cost concerns. The Supreme Court has recognized that potential financial burdens imposed on districts are relevant in determining which services are provided to meet the requirements of IDEA. *See Irving Indep. Sch. Dist. v. Tatro,* 468 U.S. 883, 892, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984); *Cedar Rapids Cmty. School Dist. v. Garret F.,* 526 U.S. 66, 119 S.Ct. 992, 999, 143 L.Ed.2d 154 (1999). The Tenth Circuit has also allowed school districts to consider costs when determining educational placements. *See Fowler v. Unified Sch. Dist. No. 259,* 107 F.3d 797, 807 n. 9 (10th Cir.1997). Cost considerations only constitute a violation of the IDEA when they are used to deny a program or service that is the only program or service that will provide FAPE. *See Clevenger v. Oak Ridge Sch. Bd.,* 744 F.2d 514, 517 (6th Cir.1984). Therefore, if the school district is considering two different programs that each would provide FAPE, cost can be considered without violating the IDEA.

In this case, there is no evidence that financial considerations were considered to deny FAPE. The evidence at the due process hearing focused on comparing two alternatives that would each provide FAPE. The hearing officer correctly decided that the program and services requested by plaintiffs exceeded the requirements of the IDEA and were not necessary financially in comparison to the program proposed by the district, which would also provide FAPE. Therefore, there is no basis for overturning the hearing officer's Decision and Order on these grounds.

**6. Reimbursement**

Plaintiffs assert that they are entitled to reimbursement because Dr. Hirase found that the district should have prepared a complete IEP for K.B. for the 1997–98 school year and that she was thus denied FAPE for that period. Defendants assert that Dr. Hirase was correct in not allowing reimbursement because the IDEA does not allow reimbursement when the parents did not inform the district that they were rejecting the placement proposed and make known their intent to enroll their child in private placement at public expense. 20 U.S.C. § 1421(a)(10)(C)(iii)(I)(aa); 34 C.F.R. § 300.403(d)(1)(i). In *Florence County School District Four v. Carter,* 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993), the United States Supreme Court held that parents have the right to reimbursement for a unilateral placement in a private school "only if a federal court concludes both that the public placement violated IDEA and that the private school placement was proper under the Act."

In this case, K.B.'s parents did not express any dissatisfaction with the therapy the district provided during the 1997–98 school year. And, K.B.'s parents explicitly requested that the district only provide speech and occupational therapy. Therefore, although the district was willing to prepare a complete IEP, it did not do so at plaintiffs' request. Dr. Hirase's finding that K.B. was denied FAPE was based

solely on the fact that a complete IEP was not prepared.

Moreover, plaintiffs waited more than two years to challenge the 1997–98 IEP and the district had no reason to believe the 1997–98 IEP should have been modified because it was mutually agreed upon. "As a matter of procedural law ... the right of review contains a corresponding parental duty to unequivocally place in issue the appropriateness of an IEP." *Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 158 (3d Cir.1994). Because the parents did not make their objections known to the district at the time of the 1997–98 IEP, they are not entitled to reimbursement under the IDEA for the 1997–98 failure to provide FAPE. *See* 20 U.S.C. § 1421(a)(10)(C)(iii)(I)(aa); 34 C.F.R. § 300.403(d)(1)(i).

Therefore, after an independent review of the evidence contained in the administrative record and giving due weight to Dr. Hirase's Decision and Order, the court concludes that the decision is based on the preponderance of the evidence and in compliance with the IDEA. Accordingly, the Decision and Order is affirmed in its entirety.

### B. Due Process Claims

Plaintiffs claim that defendants' hearing officer selection and training process violated due process because it created a hearing panel that was biased in favor of the State's school districts, and that the specific hearing officers in this case had improper conflicts of interest. Plaintiffs claim that Mae Taylor selected Ralph Haws and Steven Hirase to preside over K.B.'s due process hearing because of their records holding only for school districts and because they both had unusually close

ties with the school district that employs the Nebo School District's expert witness at K.B.'s hearing.[1]

Section 1983 provides that "every person who, under color of [law] ... subjects or causes to be subjected, any citizen of the United States ... the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress." 42 U.S.C. § 1983. Due process provides for "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The IDEA provides procedural rights to plaintiffs to "be accompanied and advised by counsel ... to present evidence and confront, cross-examine, and compel the attendance of witnesses; ... to a written ... record of such hearing; and ... to written ... findings of fact and decisions." 20 U.S.C. § 1415(h)(1)-(4); *see also Leon v. State of Michigan Bd. of Educ.*, 807 F.Supp. 1278, 1285 (E.D.Mich.1992) ("Under the IDEA, procedural due process is afforded where the party has legal representation and the opportunity for cross-examination of witnesses.") Plaintiffs have made no claims that they were denied procedural due process with respect to any of these particular processes.

As to Plaintiffs' allegations that the hearing officer selection process is biased in favor of the state and that the individual officers were biased in this case, due process affords them a "fair hearing before an impartial tribunal." *Roach v. Nat'l Trans. Safety Bd.*, 804 F.2d 1147 (10th Cir.1986). Furthermore, the IDEA has created a minimum standard of impar-

---

1. Because Dr. Haws recused before any significant action was taken in this case, the court concludes that any conflict that he may have had did not constitute a due process violation or a violation of the procedural protections under the IDEA.

tiality by automatically disqualifying certain individuals from serving as the hearing officer. "A hearing ... may not be conducted by an employee of the State Education Agency or the local educational agency involved in the education or care of the child." 20 U.S.C. § 1415(f)(3). In addition, the IDEA's implementing regulations state that the hearing officer cannot be "any person having a personal or professional interest that would conflict with his or her objectivity in the hearing." 34 C.F.R. § 300.507(a).

This court has already addressed whether the state's hearing officer selection process is biased and has determined that it comports with due process. *See L.C. v. Utah State Bd. of Educ.*, 188 F.Supp.2d 1330, 1338 (D.Utah 2002). In *L.C.*, the court recognized that "[i]t is not a violation of IDEA or due process for the State Educational Agency to choose a hearing officer without any input from parents." *Id.* The court further reasoned that an adverse ruling does not make the proceedings unfair or unbiased and a tribunal is given a presumption of impartiality unless it is substantially demonstrated that it is actually biased with respect to factual issues being adjudicated. *See id.; see also Corstvet v. Boger*, 757 F.2d 223, 229 (10th Cir.1985).

▇▇ Even though plaintiffs attack the list of potential hearing officers as being biased in favor of the school district because it consisted of administrators and attorneys working for school districts, the appearance of bias is not the legal standard. "A substantial showing of personal bias is required to disqualify a hearing officer or tribunal in order to obtain a ruling that a hearing is unfair." *Roberts v. Morton*, 549 F.2d 158, 164 (10th Cir.1976), *cert. denied*, 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977). Plaintiffs have no due process right to pick their hearing officer

and there is no evidence to support that the list of hearing officers is biased in favor of school districts. Thus, Plaintiffs have not made a substantial showing of bias that would disqualify the system that is in place under the due process guarantees contained in the IDEA and the Fourteenth Amendment.

▇▇ Plaintiffs' appearance of bias argument, based on Dr. Hirase having worked for or represented other school districts in other hearings or having ruled in favor of school districts in other decisions, does not rise to the level of a due process violation because this court has clearly refused to apply an appearance of impropriety standard in this context. *See L.C.*, 188 F.Supp.2d at 1338. Also, under IDEA standards, Dr. Hirase was not an employee of the state agency or Nebo School District. His mere association with another school district within the state is not a conflict of interest. *See Leon v. Michigan Bd. of Educ.*, 807 F.Supp. 1278, 1284 (E.D.Mich.1992). Therefore, Dr. Hirase is presumed to be impartial unless he has a personal or professional interest that would conflict with his objectivity.

Plaintiffs' claim that Dr. Hirase was biased because his wife works for the same school district as Nebo School District's expert witness in this case, is without merit. Plaintiffs have not even alleged that the two women knew each other. Moreover, there is no evidence that Dr. Hirase was biased with respect to any of the factual issues to be decided at the hearing.

Plaintiffs claim that Dr. Hirase was biased because he was a part of an "inner circle of administratively appointed hearing officers" and that to "continue receiving lucrative administrative appointments," he had to continue holding only for the school districts. A nearly identical attack was denied by this court in *L.C. See L.C.*, 188 F.Supp.2d at 1339. The *L.C.* court

ruled that this argument was not strong enough to constitute a "professional interest" and, "if it did, then any arbitrator or mediator who took fees would automatically be considered biased." *Id.*

The court concludes that Plaintiffs have not shown actual bias on the part of the hearing officer in this case. K.B. was provided with an impartial hearing presided over by an impartial hearing officer within the meaning of the IDEA and the Fourteenth Amendment. Plaintiffs' due process claims are, therefore, dismissed.

### C. "Maximum Potential" Educational Standard

 Plaintiffs argue that the Nebo Defendants adopted an elevated "maximum potential" educational standard, which is higher than the FAPE standard under the IDEA, but that they failed to apply this standard on K.B.'s behalf. Accordingly, Plaintiffs ask this court to find that the Nebo Defendants violated K.B.'s civil rights pursuant to 42 U.S.C. § 1983 and breached an express or implied contract to K.B. and her family in failing to apply its alleged "maximum potential" educational policy.

To claim that the district has adopted a higher educational standard, plaintiffs rely on a document entitled, "Student Rights and Responsibility." A portion of that document is titled "Rights of students in the schools of Nebo School District," under which it states: "students should be provided a meaningful education that will be of value to them for the rest of their lives," "students and parents should expect quality educational standards," "the quality of the school program should allow for the development at each student's maximum potential," and "students should be provided a relevant educational program and provisions should be provided to solicit and encourage student participation and continuous evaluation and development of the curriculum." Plaintiffs also rely on language from Nebo's Performance Report that states "all decisions within Nebo School District are made after considering the best interests of each student."

With respect to plaintiffs Section 1983 claim, the Supreme Court has held that "to create a constitutionally protected liberty interest, a state regulation must employ language of an unmistakably mandatory character." *Hewitt v. Helms*, 459 U.S. 460, 471–72, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). The Tenth Circuit has found that the *Hewitt* ruling applies to claims of liberty and property interests. *Cosco v. Uphoff*, 195 F.3d 1221, 1223 (10th Cir. 1999). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Defendants argue that the word "should" is not the kind of mandatory language the Supreme Court spoke of when looking at the creation of a property interest. Defendants claim that this language provides a mission statement or goals and that there is nothing in either the Student Rights and Responsibilities Statement or the Nebo School District Performance Report which creates an understanding that secures certain benefits to the plaintiffs or that support plaintiffs' claim of entitlement to those benefits.

To argue that a school district may adopt standards exceeding the minimum mandated standards, plaintiffs rely on Utah Code Annotated Section 53A–15–303(3), which provides: "A school district may provide education and training for persons with disability who are younger than three or older than twenty-one." De-

fendants argue that Section 53A–15–303(3) speaks only to the age of the recipient and not the standard of the education to be provided. Furthermore, defendants argue that Utah rules specify that the state education authority, not the local districts, set the standards in education. *See* Rule I.e.13, II.A; Utah Code Ann. § 53A–15–301(1)(b).

Regardless of whether a local school district can adopt a higher standard than the state educational agency, the court concludes that the maximum potential language does not create a protected liberty or property interest, nor does it impose a binding obligation on the school board. The use of the term "should" is not unmistakably mandatory in character. *See Hewitt,* 459 U.S. at 471–72, 103 S.Ct. 864; *Cosco,* 195 F.3d at 1223. In addition, nothing in the language suggests that it is intended to create an enforceable right against the District. Courts faced with similar language in state special education law have consistently refused to find that similar language established a higher standard. *See Gill v. Columbia,* 217 F.3d 1027 (8th Cir.2000); *Doe v. Board of Educ.,* 9 F.3d 455 (6th Cir.1993). Therefore, the court dismisses plaintiffs Section 1983 claim based on the alleged maximum potential educational standard.

 The language regarding "maximum potential" also does not create contractual or quasicontractual rights. The Supreme Court has stated that "[a]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued." *Dodge v. Board of Educ.,* 302 U.S. 74, 79, 58 S.Ct. 98, 82 L.Ed. 57 (1937). "Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body." *National R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.,* 470 U.S. 451, 465–66, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985). There is no express contract in this case because plaintiffs cannot show an exchange of a promise and acceptance, and because no statements of the Nebo School District impose binding requirements on the Nebo Board. *See Curtis Ambulance of Florida, Inc. v. Board of County Comm'rs,* 811 F.2d 1371, 1385 (10th Cir.1987).

Similarly, there is no implied-in-fact contract. The Tenth Circuit has observed that in order to establish an implied-in-fact contract under Utah law, there must be a manifestation of intent communicated to the other party sufficiently to operate as a contract provision, and the manifestation of the offerer's intent must be of such a nature that the offeree can reasonably believe that a binding offer is being made. *Corneveaux v. Cuna Mut. Ins. Group,* 76 F.3d 1498, 1506 (10th Cir.1996). No fact in this case supports a finding that there was a meeting of the minds. The school board witnesses at the administrative hearing testified that the language relied upon by plaintiffs was only language used to give a positive image and was a mission statement or an ideal, not a mandatory policy. Also, the language in the policy manual and performance report does not manifest an intent to enter into a contractual obligation and no reasonable person could believe that the District intended the language to be a binding offer. Therefore, plaintiffs contractual claims with respect to the alleged maximum potential educational standard are dismissed.

**D. Challenge To State Autism Rules**

 Defendants argue that plaintiffs have no standing to challenge the state's autism eligibility rules because K.B.'s eligi-

bility for special education services has never been challenged and K.B. has never been denied services based upon a declassification under the applicable rules. To demonstrate standing, a party must meet three requirements:

> (1) injury in fact, by which we mean an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical, (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury fairly can be traced to the challenged action of the defendant, and has not resulted from the independent action of some third party not before the court, and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the prospect of obtaining relief from the injury as a result of a favorable ruling is not too speculative.

*Northeastern Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville,* 508 U.S. 656, 663–64, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993).

■ Plaintiffs have not suffered the required injury to challenge the state autism eligibility rules. Moreover, the district has not taken any steps to remove K.B. from the list of students entitled to IDEA benefits. Plaintiffs rely only on statements made in the context of discussing what services might be appropriate in light of the improvements K.B. has made. Unless and until K.B. is denied IDEA services, plaintiffs have no standing to raise an argument concerning the state's autism eligibility rules. This claim is dismissed as there is no subject matter jurisdiction over it.

## CONCLUSION

Based on the above reasoning, Dr. Hirase's Decision and Order is AFFIRMED in its entirety, Plaintiffs' Motion for Summary Judgment is DENIED and Defendants' Motion for Summary Judgment is GRANTED.